STATE of Missouri, Respondent,

v.

A QUANTITY OF MAGAZINES, MOVIES AND OTHER ITEMS, Appellant.

No. WD 30120.

Missouri Court of Appeals, Western District.

Feb. 4, 1980.

Errol Copilevitz, Kansas City, for appellant; Harding & Copilevitz, Kansas City, of counsel.

Ralph L. Martin, Pros. Atty., Jackson County, Robert Frager, Asst. Pros. Atty., Kansas City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

PRITCHARD, Judge.

This suit began on October 27, 1977, by the filing by Kansas City Police Officer Ronald Breedlove of an application for a search warrant which described fifty-eight magazines and also "peep show" movies in thirty-eight booths, all of which were said by Breedlove to be obscene. The premises sought to be searched and the described items to be seized were alleged to be located in a retail establishment known as the Adult Literary Guild, 3849 Main Street, in Kansas City, Missouri, which is owned by appellant, Regional Book Company, Inc. Breedlove further said in his application that he observed several hundred magazines on racks in the southeast corner of the magazine room; he and another officer inspected many of them, all of which contained explicit sexual themes and photographs; and he listed by title forty-one magazines, and described photographs contained therein. The magazines which were in the display racks numbered on the average from one to five of each title. He observed also numerous dildos and other paraphernalia depicting sex organs, and he purchased and attached to his affidavit twelve of the forty-one magazines.

On the same day the trial court issued "Notice of Adversary Hearing to Determine if there is Cause to believe that items Sought in Search Warrant are Obscene", directed to appellant and its agents. The notice recited that Breedlove had made application for a search warrant; that more than 20 items were sought to be seized; that pursuant to an order made October 26, 1977 (the same date Breedlove executed his application), a copy of which was attached as "Exhibit 2", an adversary hearing would be held at 9:30 a. m., on Wednesday, November 2, 1977, before the court, for a determination of whether there is probable cause to believe that the matter sought is obscene (apply contemporary community standards), and if so, a warrant shall issue to search for and seize it; that a description of the matter sought can be found in the application for search warrant (which was incorporated in the notice by reference) under A, B, C, D and E therein; and "NOTICE is further given that after service of this Notice of the aforementioned hearing, intentional alteration, destruction, or removal of any matter, *or duplicate of matter*, described in the Notice and its attached and incorporated 'Exhibit 1' shall be punishable as contempt of Court, * * *." [Emphasis here added.] Exhibit 1 attached to the notice listed the same material described in the search warrant.

Exhibit 2, attached to the notice of adversary hearing, being a copy of the trial court's order of October 26, 1977, directed that appellant and its agents make available for inspection one copy or sample of: each magazine under subheading "A"; each movie listed under subheading "B"; each magazine, book, pamphlet, photograph, picture or publication which depict, describe, or portray pictorially acts of sexual conduct (etc.); each article, device, model or cast which depicts or portrays the human genitals (etc.); and that one copy of sample of the above mentioned be made available at the adversary hearing which is the subject of the order. After hearing of the adversary proceedings, the trial court took the case under advisement during which the produced material was examined by it, and on November 10, 1977, it made a finding of probable cause of obscenity of the material and a search warrant was issued and executed. An advisory jury was empanelled [see *McNary v. Carlton*, 527 S.W.2d 343, 348 (Mo. banc 1975)], and during an extended trial, some 877 seized exhibits were received in evidence and examined by it, and by its verdict found about 860 exhibits obscene, and about 17 exhibits not obscene. The trial court thereupon entered its judgment

declaring enumerated exhibits obscene, and entered an order of forfeiture and destruction.

After this case was tried, *State v. All Star News Agency, Inc.*, 580 S.W.2d 245 (Mo. banc 1979), was handed down and became final. That case involved two proceedings, one for seizure of magazines and one for seizure of films, but the notices of adversary hearing were the same in both, and are practically identical to the notice of adversary hearing in this case. They were: " 'After service of notice of the hearing, intentional alteration, destruction, or removal of any matter, *or duplicate of matter*, described in the notice shall be punished as contempt of court.' " [Emphasis added.] The court noted, page 247[1–5], "(5) that a restraint, prior to a judicial adversary hearing, of more material than is necessary for a determination of the question of probable obscenity is constitutionally impermissible", and "[6] In the instant case, there were restraints of all copies of magazines and movies in the warehouse between the time the notices of adversary hearing were served and the adversary hearings were held. There were prior restraints of materials presumptively protected under the First Amendment. This was constitutionally impermissible under the First, Fourth, and Fourteenth Amendments." Of course, in *All Star*, there was, in addition to the threat of contempt for destruction of duplicate of matter described in the notice, a police officer stationed at appellant's warehouse to insure that no material was removed. No police officer was so employed in this case, and the state argues that that fact distinguishes this case from *All Star*, saying, "In the instant case, there was no round the clock police guard of the appellant's business and in fact, the police, when they finally did execute the search warrant, did so in the evening so that they would interfere with the business as little as possible. There was no evidence whatsoever of an interruption of the flow of this material to the public until after the adversary hearing. When the police finally executed the warrant, the store was open for business and there were customers present when the

police were boxing up the magazines. * *
*All Star News*, supra, sanctions the prior restraint of one copy of each magazine or film, which is exactly what took place in the case at bar. Appellant's brief at page 14 refers to the fact that a Notice of Adversary Hearing was served upon Appellant's representative, but Appellant's brief fails to point out that along with the Notice, an Order was also served upon Appellant. The Order, in brief, stated that Appellant should bring one copy of certain magazines, films or devices containing the depiction of certain described sexual acts to the adversary hearing, allow the State to pick them up for hearing, or show cause why the failure to bring these items to the adversary hearing should prevent the issuance of a search warrant for same. In other words, the Order provided for the prior restraint of one item and only of the films and magazines which prior restraint is sanctioned by our Supreme Court in *All Star News*, supra." Respondent cites a number of federal cases: *Metzger v. Pearcy*, 393 F.2d 202 (7th Cir. 1968); *Tyrone, Inc. v. Wilkinson*, 410 F.2d 639 (4th Cir. 1969); *Bethview Amusement Corp. v. Cahn*, 416 F.2d 410 (2nd Cir. 1969), among others. These cases stand for the proposition that a prior adversary hearing is required on the issue of probable cause of obscenity before a search warrant may issue and seizure be accomplished. None had an order of general restraint of duplicates under a threat of contempt. It is true that in the *All Star* case a police officer was stationed to insure that no material was removed, which would be a greater restraint than a mere threat of contempt, which was present in *All Star*, and which is present here. Nonetheless, the restraint is present, and causes the proceedings below to be constitutionally infirm. The order of the court requiring that but one copy of the material be produced for inspection does not ameliorate the prior restraint of other duplicate copies contained in the notice of adversary proceedings. The *All Star* case controls, and requires reversal and remand of this case. See also the later case, *State of Missouri v. All Star News Agency*, 588

S.W.2d 494 (Mo. banc 1979), reaffirming the opinion in the *All Star* case, supra, 580 S.W.2d 245. Other issues presented on this appeal need not be considered.

The judgment is reversed and the case is remanded with directions to return all of the seized material to appellant.

All concur.